UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MICHAEL ANGIONE | : | |
| Plaintiff, | : | |
| | : | CIVIL ACTION NO. |
| v. | : | 3:14-cv-1049 (VLB) |
| | : | |
| SIKORSKY AIRCRAFT CORP., | : | July 29, 2016 |
| ARNOLD HANAFIN CORP., | : | |
| Defendants. | : | |

**MEMORANDUM OF DECISION GRANTING DEFENDANTS SIKORSKY AIRCRAFT
CORP. AND ARNOLD HANAFIN CORP.'S MOTIONS FOR SUMMARY JUDGMENT
[Dkt. ## 53, 54]**

Plaintiff Michael Angione ("Angione") brings a claim under the Age
Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, against
Defendants Sikorsky Aircraft Corp. ("Sikorsky") and Arnold Hanafin Corp.
("Arnold") (collectively the "Employer Defendants"). The Employer Defendants
have each moved for summary judgment. For the reasons that follow, the
motions are GRANTED.

I.    Factual Background

Defendant Arnold is a provider of temporary workers for various
companies, including Defendant Sikorsky. [Dkt. #53-1, Def. Arnold's Rule 56(a)(1)
Statement at ¶ 1; Dkt. #66, Pl.'s Rule 56(a)(2) Statement at ¶ 1]. When a client
alerts Arnold of a need for a temporary worker, Arnold provides the client with
possible candidates who may be qualified to perform the work sought. [Dkt. #53-
1, Def. Arnold's Rule 56(a)(1) Statement at ¶ 2; Dkt. #66, Pl.'s Rule 56(a)(2)
Statement at ¶ 2]. Thereafter, the client decides which candidate, if any, to
accept. [*Id.*]. Once a client accepts a temporary worker from Arnold, Arnold and

1

the temporary employee execute an "Employment Agreement," which clearly states that the employee's work assignment is temporary and is at the will of the client.  [Dkt. #53-1, Def. Arnold's Rule 56(a)(1) Statement at ¶ 5; Dkt. #66, Pl.'s Rule 56(a)(2) Statement at ¶ 5].  Once the Employment Agreement is in place, the employee performs all of his or her work at the client's facilities, under the direction and supervision of the client.  [Dkt. #53-1, Def. Arnold's Rule 56(a)(1) Statement at ¶ 6; Dkt. #66, Pl.'s Rule 56(a)(2) Statement at ¶ 6].  When the client ends the temporary assignment, the temporary employee's Employment Agreement with Arnold also ends.  [Dkt. #53-1, Def. Arnold's Rule 56(a)(1) Statement at ¶ 7; Dkt. #66, Pl.'s Rule 56(a)(2) Statement at ¶ 7].

Plaintiff Angione began working for Sikorsky, as a temporary employee of Arnold, on November 6, 2007.  [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 1; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 1; Dkt. #53-1, Def. Arnold's Rule 56(a)(1) Statement at ¶ 15; Dkt. #66, Pl.'s Rule 56(a)(2) Statement at ¶ 15].  That day, Angione signed an Employment Agreement with Arnold.  [Dkt. #53-1, Def. Arnold's Rule 56(a)(1) Statement at ¶ 15; Dkt. #66, Pl.'s Rule 56(a)(2) Statement at ¶ 15].  The Agreement stated that Arnold

> provides the services of its employees to clients on a temporary contract or project basis.  Therefore, the length of the assignment will be based upon the project and/or supplemental work force requirements of the Client.  Any reference to the length of assignment is an estimate and termination of employment will be governed by the terms of this agreement.

[Dkt. #53-1, Def. Arnold's Rule 56(a)(1) Statement at ¶ 15; Dkt. #66, Pl.'s Rule 56(a)(2) Statement at ¶ 15; Dkt. #53-11, Ex. 1 to Callahan Aff. at ¶ 1].  It further stated that Angione was "bound by any applicable rules, regulations, or

policies established by Client wherever Employee performs services." [Dkt. #53-11, Ex. 1 to Callahan Aff. at ¶ 12]. Finally, the Agreement provided that it was "terminable at will by either party . . . . [E]ither the Employee or [Arnold] or both may terminate this agreement at any time for any reason or no reason at all with or without prior notice." [*Id.* at ¶ 13].

Angione's initial assignment at Sikorsky was as a materials analyst in Sikorsky's Avionics Department. [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 9; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 9]. While working in this Department, Angione was supervised by Robert Anderson ("Anderson"). [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 10; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 10]. After working approximately two years in the Avionics Department, Angione was assigned to the Aerospace Services ("SAS") group. [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 10; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 10, Dkt. #54-6, Ex. 4 to Def. Sikorsky's Mot. for Summ. J., Angione Dep. at 69:21-70:1]. The group within SAS in which Angione worked was led by David Garbien, a materials manager. [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 10; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 10]. Roughly two years later, in July 2011, Angione was assigned to a different group within SAS, where he reported to a different materials manager, James Caldwell ("Caldwell"). [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 11; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 11]. Caldwell, in turn, reported to Jeffrey Laczkoski ("Laczkoski"). [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 12; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 12]. Angione remained in this role

3

at SAS until February 22, 2012, when both his temporary employment at Sikorsky and Employment Agreement with Arnold were terminated.  [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 13; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 13].

During his four years at Sikorsky, Angione contends that he applied for at least five permanent positions within the company.  [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 14; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 14]. Three of these applications were for a position as a materials analyst, the position in which Angione worked during his time at Sikorsky.  [Dkt. #54-6, Ex. 4 to Def. Sikorsky's Mot. for Summ. J., Angione Dep. at 255:15-19].   Angione otherwise applied for positions in Sikorsky's purchasing and finance groups.  [*Id.*].

Angione asserts that in 2008, he applied and interviewed for a financial analyst position at Sikorsky.  [Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶¶ 15, 17; Dkt. #70, Angione Aff. at ¶¶ 15, 17].   The position was located in Sikorsky's Finance Department, a different department from the one in which Angione worked.  [Dkt. #54-6, Ex. 4 to Def. Sikorsky's Mot. for Summ. J., Angione Dep. at 209:18-20].   Angione was not hired.  [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 18; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 18].  Angione claims a younger employee was hired, but offers conflicting accounts as to the identity of the person.  *Compare* [Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 19 (stating that "[t]he financial analyst position was filled by an individual who was approximately 30 years old" and citing to paragraph 17 of his affidavit); Dkt. #70, Angione Aff. at ¶ 17 (stating that "Kevin Bova, a contract employee approximately

ten years younger than me was hired . . . *for the position of buyer*") (emphasis added)] *with* [Dkt. #54-6, Ex. 4 to Def. Sikorsky's Mot. for Summ. J., Angione Dep. at 193:24-194:3 (stating that Sikorsky "hired some kid . . . Thirty years old" whose name Angione could not remember)].[1]  Regardless, Angione admits that he has no knowledge of the alleged hiree's qualifications, position he held, whether he was an internal or external hire, or any other circumstances surrounding his hire. [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 20; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 20].

Sometime in 2008 or 2009, Angione applied for a materials analyst position in the Avionics Department, where he was working as a contract employee.  [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 21; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 21].  Angione was interviewed by Anderson, his direct supervisor at the time.  [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 22; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 22].  A week later, Anderson informed Angione that he was not selected for the position.  [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 23; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 23; Dkt. #54-6, Ex. 4 to Def. Sikorsky's Mot. for Summ. J., Angione Dep. at 258:4-10]. Anderson did not give a reason, nor did Angione ask him for one.  [Dkt. #54-6, Ex.

---

[1] In fact, Angione's deposition testimony does not establish that the "kid" he saw in the Finance Department was the same person who was hired for the position for which he interviewed.  [Dkt. #54-6, Ex. 4 to Def. Sikorsky's Mot. for Summ. J., Angione Dep. at 193:25].  Angione testified that at some unknown time after he unsuccessfully interviewed, he noticed a younger male in the Finance Department whom he did not recognize, and he asked the senior analyst who submitted his resume for the finance position who the person was.  [*Id.* at 194:14-23].  The senior analyst said only, "That's the new guy."  [*Id.* at 194:6-8]. Angione asked no further questions, and for all he knew, the Finance Department could have hired multiple financial analysts before, after, or at the same time it declined to hire Angione.  [*Id.* at 194:6-9, 195:1-2].

4 to Def. Sikorsky's Mot. for Summ. J., Angione Dep. at 258:12-16].   Angione asserts that a younger male, Kevin Bova, was hired, and that later, he said to Anderson, "Kevin [Bova] does not have a college degree.  You want a college [degree] . . . I don't understand."  [*Id.* at 258:22-24].  Angione does not submit evidence indicating what, if any, response Anderson gave him.[2]

Sometime in 2009 or 2010, Angione again applied for a materials analyst position.  [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 24; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 24].  The position had been posted online, and after applying, Angione received a call from an unidentified male manager informing him that he was qualified for the position.  [Dkt. #54-6, Ex. 4 to Def. Sikorsky's Mot. for Summ. J., Angione Dep. at 183:1-184:20].  After a period of silence, Angione followed up with the manager, who informed him that Sikorsky

---

[2] Angione claims that at some unknown time, without any context or record support, Anderson told him that if he "was younger [he] would be hired."  [Dkt. #70, Angione Aff. at ¶ 16].  At his deposition, Angione testified that Anderson, Sue Sellers, David Garbien, Tom Gallo, Larry Lavorgna, and two other unidentified Sikorsky employees told him that if he was "ten, fifteen years younger, [he] would have been hired years ago."  [Dkt. #54-6, Ex. 4 to Def. Sikorsky's Mot. for Summ. J., Angione Dep. at 213:19-214:10].  Other than Anderson, Angione does not allege that the employees were involved in either the hiring process of any of the jobs he applied for or his termination, nor does he contend that they had personal knowledge about the facts and circumstances of Sikorsky's hiring decisions.  Angione provides no other facts regarding any of these conversations in his summary judgment briefing.  The Court's independent review of the deposition transcripts reveals that Anderson made this comment in a discussion concerning Angione's temporary materials analyst position.  [*Id.* at 228:12-20].  Angione could not recall when this discussion occurred, in particular, whether it was before or after Angione first applied for a permanent materials analyst position in the Avionics Department.  [*Id.* at 252:14-253:8].  Also, Angione's testimony regarding the substance of the comment Anderson and the others allegedly made was inconsistent.  *See* [*id.* at 220:20-221:4 (stating that they told him, "if you were ten to fifteen years younger . . . [Sikorsky]'d probably hire you")].

had decided not to fill the position.  [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 25; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 25].[3]

Finally, in the spring of 2011 (or thereabout), Angione claims that he applied for a materials analyst position for a third time, as well as for a buyer position.  [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 26; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 26; Dkt. #70, Angione Aff. at ¶ 18].  The materials analyst position was in Sikorsky's Commercial Aircraft Department, a different department from the one in which Angione worked.  [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 31 Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 31; Dkt. #54-6, Ex. 4 to Def. Sikorsky's Mot. for Summ. J., Angione Dep. at 209:10-13].  A position in the group opened when an unknown individual was promoted, and that person recommended Angione for the position he was vacating.  [Dkt. #54-6, Ex. 4 to Def. Sikorsky's Mot. for Summ. J., Angione Dep. at 197:22-198:21].  Angione interviewed for the position, but he was not hired.  [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 29; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 29; Dkt. #70, Angione Aff. at ¶ 18].  Angione could not recall any details about the individuals who recommended and interviewed him for the position, nor does he know who, if anyone, was hired.  [Dkt. #54-6, Ex. 4 to Def. Sikorsky's Mot. for Summ. J., Angione Dep. at 199:4-9, 19-22, 203:18-20].  However, he did recall that the individual who recommended him "was totally stupefied" that Angione was

---

[3] Angione did not believe this explanation, but could not offer any reason for his disbelief beyond his own perception that Sikorsky "[s]eemed like they wanted to hire younger people."  [Dkt. #54-6, Ex. 4 to Def. Sikorsky's Mot. for Summ. J., Angione Dep. at 186:4-10, 18-25].

not selected, and he believed that Sikorsky cancelled the requisition.  [*Id*. at 200:3-4, 203:20-204:12].

As for the purchasing position, Angione interviewed, and afterward, spoke with the hiring manager, who allegedly told him that he was not hired for the position because he did not have a college degree and did not have experience with software required to perform the duties of the position.  [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 30; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 30].  The manager also explained that Angione's "background was more in warehousing" and he was looking for someone with experience "in the overall procurement end," which Angione acknowledged "would have been hard to learn."  [*Id*. at 213:1-5].  Angione does not know whether the buyer position was ever filled.  [*Id*. at 214:15-19].  Defendant Sikorsky maintains that it has no record of Angione applying for any positions in 2011.  [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 32; Dkt. #54-8, Ex. 6 to Def. Sikorsky's Mot. for Summ. J., Redlowsk Decl. at ¶ 3].

At the time Angione was working at Sikorsky, the company had a policy in effect called the "Sikorsky Security and Access Requirements."  [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 39; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 39; Dkt. #54-8, Ex. 6 to Def. Sikorsky's Mot. for Summ. J., Redlowsk Decl. at ¶ 4].  The policy prohibited employees from "'send[ing] or receiv[ing] mail or electronic messages through [Sikorsky's] mail or computer systems . . . or conduct[ing] any personal or business activities unrelated to . . . the services the contract employee is performing."  [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1)

Statement at ¶ 39; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 39]; *see also* [Dkt. #54-10, Ex. 8 to Def. Sikorsky's Mot. for Summ. J at 2].   Angione admits that he received and opened a link to Sikorsky's policies and procedures, including the "Sikorsky Security and Access Requirements," but could not recall which, if any, of the policies he reviewed.  [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶¶ 38-39; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶¶ 38-39].   Indeed, at his deposition, Angione testified that he opened the link, noticed that it contained "some rules and regulations policy," but he "didn't really read it."  [Dkt. #54-6, Ex. 4 to Def. Sikorsky's Mot. for Summ. J., Angione Dep. at 94:1-6].   Regardless of whether he reviewed the policies he was given, Angione further admitted at his deposition that at different times, his supervisors, Caldwell and Anderson, told him that he was not supposed to be using Sikorsky's email or internet for personal, non-work-related purposes.  [*Id.* at 107:25-108:4, 24-25].  Accordingly, Angione testified that he understood that Sikorsky had a rule that he could not use Sikorsky resources to perform personal work.  [*Id.* at 107:7-24].[4]

      Contrary to his sworn testimony that he was informed about the computer policy in an email which he opened and read and recognized that it contained rules prescribing the use of Sikorsky computers, Angione averred in a sworn affidavit that while he was working at Sikorsky, he was never explicitly warned

---

[4] Defendant Sikorsky identifies numerous additional written policies in effect at the time of Angione's employment which prohibited employees from using Sikorsky equipment to conduct personal work or for other recreational purposes.  *See* [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶¶ 48-53; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶¶ 48-53].  By bare affidavit, Angione contends that he did not receive copies of some of these communications. [Dkt. #70, Angione Aff. at ¶¶ 19-20].

about his use of email, never informed that he was not permitted to send email unrelated to his work during periods that he was not "direct billing/charging a client" of Sikorsky for work on a project, and that he observed an unknown number of unidentified Sikorsky employees "using email for non-employment related matters."  [Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶¶ 33, 37, 39, 45-48; Dkt. #70, Angione Aff. at ¶ 11].   Angione also points out that one of his supervisors, Caldwell, admitted to occasionally sending personal emails while working at Sikorsky.  [Dkt. #68, Pl.'s Rule 56(a)(2) Statement of Disputed Facts at ¶ 17 (citing Ex. B to Pl.'s Opp'n, Caldwell Dep. at 39:1-25)].

On December 22, 2011, Angione sent an email from his Sikorsky-provided email address to an individual named "Ron," an employee of the Norwalk Chamber of Commerce, on behalf of a company called "R3 Omni."  [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶¶ 54, 60; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶¶ 54, 60].  The email discussed a kiosk that the United States Army had purchased from R3 Omni, and a proposal R3 Omni had presented to the Norwalk Chamber of Commerce.  [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶¶ 58, 60; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶¶ 58, 60; Dkt. #54-15, Ex. 13 to Def. Sikorsky's Mot. for Summ. J. at SIK0072-73].  Angione's email states that one of the attachments was "the offer we presented to the chamber in Norwalk."  [Dkt. #54-15, Ex. 13 to Def. Sikorsky's Mot. for Summ. J. at SIK0073].  The parties agree that this email was unrelated to Angione's duties at Sikorsky.  [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 59; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 59].

At the time Angione sent the email he was not an employee of R3 Omni, but he planned to become employed with the company if it got "off the ground."  [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 56; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 56].   After his termination from Arnold and Sikorsky, Angione became associated with R3 Omni.   [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 57; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 57; Dkt. #54-6, Ex. 4 to Def. Sikorsky's Mot. for Summ. J., Angione Dep. at 125:1-7].   In particular, at his deposition, Angione confirmed the accuracy of public documents referencing him as R3 Omni's director of procurement and logistics, and testified that he lists his position at R3 Omni on his resume.  [*Id.* at 124:3-9, 126:14-24].

Angione further avers in opposition to the Employer Defendants' motion for summary judgment that at the time he sent the email, he had no business interest in R3 Omni, at no point did he have "a formal business affiliation with R3 Omni," and that he sent the email as a personal favor for his friend, Jim Condron, the owner of R3 Omni, because the recipient, "Ron," was an acquaintance of Angione's at the Norwalk Police Department.  [Dkt. #70, Angione Aff. at ¶ 21].[5]

---

[5] Angione's affidavit and his Rule 56(a)(2) Statement are at odds with respect to the position held by "Ron."  In his Rule 56(a)(2) Statement, Angione admits that he was affiliated with the Norwalk Chamber of Commerce.  *See* [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 60; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 60].  In his affidavit, Angione contends, without any evidentiary support, that Ron was an acquaintance from the Norwalk Police Department.  [Dkt. #70, Angione Aff. at ¶ 21].  The email itself has nothing to do with the police department, references the "chamber in Norwalk," discusses a business proposition which Angione and others made to the chamber, and attaches a brochure about R3 Omni and its products and a business proposal to the Norwalk Chamber of Commerce.  [Dkt. #54-15, Ex. 13 to Def. Sikorsky's Mot. for Summ. J. at SIK0072-73; Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 63; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 63].

On February 17, 2012, Kent Johnson, a Sikorsky purchasing manager, forwarded Angione's email to John Cerreta, a Sikorsky materials manager. [Dkt. #54-15, Ex. 13 to Def. Sikorsky's Mot. for Summ. J. at SIK0072]. Johnson explained that he received the email from another Sikorsky employee who, in turn, had received the email from his brother, an intended recipient, who noticed Angione's Sikorsky email address and title and was curious if Sikorsky was behind the kiosk sale. [*Id.*; Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 66; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 66]. Eventually, Angione's email made its way to his supervisor, Laczkoski, and ultimately, to Amanda Weaver (née Sanella), a human resources employee at Sikorsky. [Dkt. #54-15, Ex. 13 to Def. Sikorsky's Mot. for Summ. J. at SIK0072; Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶¶ 67-68; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶¶ 67-68].

After receiving the email, Weaver decided to terminate Angione's temporary work assignment, due to Angione's repeated "violation of multiple company policies" prohibiting the use of company resources for non-business purposes despite having been previously warned, "including but not limited to" his December 22, 2011 email on behalf of R3 Omni. [Dkt. #54-17, Ex. 15 to Def. Sikorsky's Mot. for Summ. J., Weaver Decl. at ¶ 3]. In making this decision, Weaver asserts that she was aware Caldwell had previously warned Angione about personal use of Sikorsky's resources. [*Id.* at ¶ 4]. After reaching this decision, Weaver contacted Corey Lay ("Lay"), Arnold's Director of Operations. [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 72; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 72].

On February 23, 2012, Lay emailed Weaver to inform her that he left a phone message notifying Angione that his contract with Sikorsky had ended. [*Id.*; Dkt. #54-18, Ex. 16 to to Def. Sikorsky's Mot. for Summ. J. at SIK0087-88]. Lay's email stated that Angione "was given no additional information." [Dkt. #54-18, Ex. 16 to to Def. Sikorsky's Mot. for Summ. J. at SIK0087]. While it appears Angione and Lay spoke regarding Sikorsky's discharge decision, Angione offers no evidence that he ever sought an explanation of the reason(s) for the decision from anyone at Sikorsky or Arnold. *See* [Dkt. #53-9, Ex. 1 to Lay Aff. at 1].

At the time he was terminated, Angione asserts that he was 59 years old and the oldest employee in his work group at Sikorsky. [Dkt. #70, Angione Aff. at ¶ 13]. He further maintains that he was the only Arnold employee from his work group who was discharged at the time. [*Id.*]. Finally, Angione contends that approximately two months prior to his termination, Sikorsky hired a new contract employee in his group, a female who was less than thirty years old. [*Id.* at ¶ 12]. His other coworkers at the time were between forty and fifty-five years old. [*Id.*]. Only one coworker was a permanent Sikorsky employee, and she was over forty years old. [*Id.*].[6]

On March 13, 2012, Angione filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and the Connecticut Commission on Human Rights and Opportunities ("CCHRO") alleging age discrimination. [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 74; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 74]. Thereafter, he commenced the present action.

---

[6] Angione asserts, without any support, that he was similarly or more qualified than the other younger employees in his work group. [Dkt. #70, Angione Aff. at ¶ 14].

## II.   Legal Standard

Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of proving that no factual issues exist. *Vivenzio v. City of Syracuse,* 611 F.3d 98, 106 (2d Cir. 2010). "In determining whether that burden has been met, the court is required to resolve all ambiguities and credit all factual inferences that could be drawn in favor of the party against whom summary judgment is sought." *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986)). "If there is any evidence in the record that could reasonably support a jury's verdict for the nonmoving party, summary judgment must be denied." *Am. Home Assurance Co. v. Hapag Lloyd Container Linie, GmbH,* 446 F.3d 313, 315–16 (2d Cir. 2006) (internal quotation marks and citation omitted). In addition, determinations of the weight to accord evidence or assessments of the credibility of witnesses are improper on a motion for summary judgment, as such are within the sole province of the jury. *Hayes v. New York City Dep't of Corr.,* 84 F. 3d 614, 619 (2d Cir. 1996).

"A party opposing summary judgment cannot defeat the motion by relying on the allegations in his pleading, or on conclusory statements, or on mere assertions that affidavits supporting the motion are not credible. At the summary judgment stage of the proceeding, Plaintiffs are required to present admissible evidence in support of their allegations; allegations alone, without evidence to

back them up, are not sufficient." *Welch–Rubin v. Sandals Corp.,* No. 3:03-cv-481, 2004 WL 2472280, at *1 (D. Conn. Oct. 20, 2004) (internal quotation marks and citations omitted); *Martinez v. State of Connecticut*, 817 F. Supp. 2d 28, 37 (D. Conn 2011).  Where there is no evidence upon which a jury could properly proceed to find a verdict for the party producing it and upon whom the onus of proof is imposed, such as where the evidence offered consists of conclusory assertions without further support in the record, summary judgment may lie. *Fincher v. Depository Trust and Clearance Co.,* 604 F.3d 712, 727 (2d Cir. 2010).

III.   <u>Analysis</u>

   A. <u>The ADEA</u>

      Under the ADEA, "it shall be unlawful for an employer  . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."  29 U.S.C. § 623(a)(1).  Claims of discriminatory treatment under the ADEA are analyzed using the burden-shifting framework set forth in *McDonnell Douglas*, as modified by the Supreme Court's subsequent decision in *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167 (2009).  *See Gorzynski v. Jetblue Airways Corp.*, 596 F.3d 93, 106 (2d Cir. 2010) (finding post-*Gross* that "we remain bound by, and indeed see no reason to jettison, the burden-shifting framework for ADEA cases that has been consistently employed in our Circuit").  Under *McDonnell Douglas*, a *prima facie* case of discrimination consists of proof that a plaintiff: (1) was within a protected class; (2) was qualified for her position; (3) was subject to an adverse employment action; and (4) the

adverse action occurred under circumstances giving rise to an inference of discrimination. *U.S. v. Brennan*, 650 F.3d 65, 93 (2d Cir. 2011).  Even at the summary judgment phase, where a plaintiff must put forth evidence in support of each of these elements, the "plaintiff's *prima facie* burden [i]s minimal and *de minimis.*" *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 76 (2d Cir. 2005) (internal quotation marks omitted).  However, "[t]he inference of impermissible discrimination, in order to survive summary judgment, must be reasonable." *Thomesen v. West*, No. 99-CV-3035 (NGG) (TEB), 2001 WL 1636311, at *4 (E.D.N.Y. Dec. 20, 2001) ("The Second Circuit has upheld summary judgment for employers on the grounds that the facts submitted by the plaintiff do not give rise to a reasonable inference of discrimination.") (citing *Bickerstaff v. Vassar College*, 196 F.3d 435, 451 (2d Cir. 1999)).

After the plaintiff has met the initial burden of establishing his *prima facie* case, "the burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action." *Id.* (citing *McDonnell Douglas*, 411 U.S. at 802).  "Once such a reason is provided, the plaintiff can no longer rely on the prima facie case, but may still prevail if she can show that the employer's determination was in fact the result of discrimination." *Gorzynski*, 596 F.3d at 106.  However, at this step, *"Gross* makes clear that 'a plaintiff bringing a disparate-treatment claim pursuant to the ADEA must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action' and not just a contributing or motivating factor." *Id.* (quoting *Gross*, 557 U.S. at 180).

16

**B.**     **Angione Fails to Set Forth a *Prima Facie* Case of Discrimination as He Has Failed to Raise Any Circumstances Giving Rise to an Inference of Discrimination**

Angione raises two sets of adverse employment actions: (i) Sikorsky's failure to hire him as a permanent employee and (ii) wrongful termination by both Employer Defendants.  *See, e.g., McKinney v. Dep't of Transp.*, ---F. Supp. 3d ----, 2016 WL 2944522, at *4 (D. Conn. Mar. 7, 2016) ("'[A]dverse employment actions include discharge, refusal to hire, refusal to promote, demotion, reduction in pay, and reprimand.'") (quoting *Morris v. Lindau*, 196 F.3d 102, 110 (2d Cir. 1999), *abrogated on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006)).  However, the facts he offers in support of each do not raise a reasonable inference of discrimination.

> 1.     **The circumstances surrounding the denial of Angione's applications for permanent positions at Sikorsky are insufficient to raise an inference of discrimination.**

First, Angione claims that during the four-year period he worked as a temporary employee at Sikorsky, he unsuccessfully applied for five permanent positions within the company despite being more qualified than similarly situated candidates who were younger than him.  [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 14; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 14].

> [A] plaintiff alleging failure to hire must prove a prima facie case by showing by a preponderance of the evidence that []: (1) he is a member of a protected class; (2) he is qualified for the position sought; (3) he was rejected from the position; and (4) after his rejection, the employer continued to seek applica[tions] from persons with the same qualifications [as] plaintiff or that the rejection occurred under circumstances that can be reasonably seen as supporting an inference of discrimination.

*Rodriguez v. New York City Health & Hosps. Corp.*, No. 14 Civ. 4960 (BMC), 2015 WL 5229850, at *3 (E.D.N.Y. Sept. 8, 2015) (citing *McDonnell Douglas*, 411 U.S. at 802 and *Gaffney v. Dep't of Info. Tech. & Telecomms.*, 536 F. Supp. 2d 445, 462 (S.D.N.Y. 2008)).

Beginning with the purchasing and finance positions, Angione does not set forth any facts establishing that he was qualified for either of them.  Angione worked exclusively at Sikorsky as a materials analyst.  *See* [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶¶ 9-13; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶¶ 9-13].  Angione does not introduce any evidence of the qualifications for or the duties of either position, or any relevant experience he possessed at the time he applied for each position.  Indeed, Angione admits that the hiring manager for the purchasing position said that he lacked experience with the software required to perform the position, and explained that Angione's "background was more in warehousing," whereas the manager was looking for someone with experience "in the overall procurement end," which Angione acknowledged "would have been hard to learn."  [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 30; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 30; Dkt. #54-6, Ex. 4 to Def. Sikorsky's Mot. for Summ. J., Angione Dep. at 213:1-5].

In addition, Angione does not set forth any facts tending to show that Sikorsky's decision not to hire him for either of these positions had anything to do with unlawful discrimination.  With regard to the finance position, Angione claims a younger employee was hired (a claim which itself is subject to doubt given his conflicting accounts as to the identity of the hiree), but he readily

admits that he has no understanding of the employee's qualifications, the position he held, whether he was an internal or external hire, or any other circumstances surrounding his hire. [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶¶ 19-20; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶¶ 19-20; Dkt. #70, Angione Aff. at ¶ 17]. Standing alone, the fact that Sikorsky may have hired someone who was younger than Angione does not raise an inference of discrimination. *See O'Sullivan v. New York Times*, 37 F. Supp. 2d 307, 319 (S.D.N.Y. 1999) ("[A]llegations of replacement by younger workers do not, without more, prove discrimination.") (citing cases); *see also Stouter v. Smithtown Cent. School Dist.*, 687 F. Supp. 2d 224, 234 (E.D.N.Y. 2010) (granting summary judgment to defendant on ADEA claim where only admissible "fact upon which plaintiff bases her ADEA claim is that she was replaced by someone who is significantly younger").

As for the purchasing position, Angione admitted that the hiring manager informed him that he was unqualified for the position, and he acknowledged that there were legitimate substantive deficiencies in his employment background. [Dkt. #54-6, Ex. 4 to Def. Sikorsky's Mot. for Summ. J., Angione Dep. at 213:1-5]. Moreover, Angione has no idea whether the position was even filled. [*Id.* at 214:15-19].[7] In light of these facts, Angione has not come close to establishing

---

[7] Given Angione's admitted lack of experience with the required software and with Sikorsky's procurement business, it makes no difference whether or not the manager's decision was also based on a false belief that Angione lacked a college degree. [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 30; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 30; Dkt. #54-6, Ex. 4 to Def. Sikorsky's Mot. for Summ. J., Angione Dep. at 213:1-5]. Indeed, Angione contemporaneously corrected any misunderstanding about his degree, and with this knowledge, the manager stood by his decision not to hire him for the position. [Dkt. #54-6, Ex. 4

**19**

that Sikorsky's decision not to hire him for either the finance or purchasing position was the product of unlawful discrimination.

Angione is similarly unsuccessful in raising an inference of discrimination in connection with his three materials analyst applications. As an initial matter, Defendant Sikorsky asserts, and Angione does not dispute, that at least two of these applications fall far outside the 300-day limitations period, which, in this case, ended on May 18, 2011. *See* [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 74; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 74]; 29 U.S.C. § 626(d)(2) (establishing 300-day time bar for ADEA claims). However, this does not preclude the Court from considering these untimely applications as "'relevant background evidence' in support of [Angione's] timely claim." *Magnello v. TJX Cos., Inc.*, 556 F. Supp. 2d 114, 119-20 (D. Conn. 2008) (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 112 (2002)).

Turning to his first, untimely, application, sometime in 2008 or 2009, Angione was approached and interviewed by his supervisor, Bob Anderson. [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 22; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 22]. A week after the interview, Anderson told him he was not selected. Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 23; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 23; Dkt. #54-6, Ex. 4 to Def. Sikorsky's Mot. for Summ. J., Angione Dep. at 258:4-10]. Angione neither sought nor received any explanation for the decision. [Dkt. #54-6, Ex. 4 to Def. Sikorsky's Mot. for Summ.

---

to Def. Sikorsky's Mot. for Summ. J., Angione Dep. at 210:1-7]. Angione offers no facts to suggest that this unidentified manager manufactured a pretext not to hire him for a position for which Angione himself acknowledges he was not qualified.

J., Angione Dep. at 258:12-16].  At some unknown time thereafter, Angione

learned that Anderson had hired Kevin Bova, an applicant ten years younger than

Angione, who lacked a college degree.  [*Id.* at 257:13-14; Dkt. #70, Angione Aff. at

¶ 17].  Angione presents no facts concerning whether the position required a

college degree, the nature and relevance of Angione's college degree to the

position, or any comparison between his and Bova's credentials which would

undercut the possibility that, while lacking a college degree, Bova had some

other attribute Sikorsky reasonably could have deemed more significant, such as

more experience working as a materials analyst.  In fact, after learning of Bova's

hire, Angione claims he mentioned this distinction to Anderson, but tellingly, he

offers no evidence of Anderson's response.  *See* [*id.* at 258:22-24].  Given the

dearth of any additional evidence, the mere fact that Angione had a college

degree and Bova lacked one offers little, if any, evidence of discriminatory intent.

Angione also contends that at some point, Anderson (and six other

Sikorsky employees) told him that if he was "ten, fifteen years younger, [he]

would have been hired years ago."  [Dkt. #54-6, Ex. 4 to Def. Sikorsky's Mot. for

Summ. J., Angione Dep. at 213:19-214:10].  This stray remark fails to raise an

inference of discrimination for at least two reasons.  First, while the remark

references Angione's age, it expresses no opinion about Angione's present or

future success as an applicant for any particular position at Sikorsky; only the

vague sentiment that had he been younger, he would have been hired at some

prior time for some unidentified position.  Indeed, elsewhere, Angione claims he

was told something different, that "if you were ten to fifteen years younger . . .

**21**

[Sikorsky]'d *probably* hire you."   [*Id.* at 220:20-221:4 (emphasis added)].   This version of the statement raises even less of an inference of discrimination, as it offers no certainty that Sikorsky would have ever hired Angione, regardless of his age.

Second, and more importantly, while Anderson was both Angione's supervisor and a decision-maker with respect to the permanent materials analyst position, Angione offers no concrete facts as to when Anderson made this remark, and the context in which he made the remark indicates that it was *not* related to the decision-making process.   *See Virag v. Goodwill Indus. of Western Connecticut, Inc.*, No. 3:11-cv-1499 (DJS), 2015 WL 540607, at *5 (D. Conn. Feb. 10, 2015) ("In determining whether a comment is a probative statement that evidences an intent to discriminate or whether it is a non-probative 'stray remark,' a court should consider . . . (1) who made the remark . . . (2) when the remark was made in relation to the employment decision at issue . . . (3) the content of the remark . . . and . . . (4) the context in which the remark was made.'") (quoting *Pronin v. Raffi Custom Photo Lab, Inc.*, 383 F. Supp. 2d 628, 637 (S.D.N.Y. 2005)). Angione could not recall when Anderson made the statement, and he testified that when he made it, the two were discussing Angione's temporary materials analyst position—*not* the permanent position for which he interviewed.   [Dkt. #54-6, Ex. 4 to Def. Sikorsky's Mot. for Summ. J., Angione Dep. at 228:12-20]. Accordingly, Angione "has failed to demonstrate a nexus between [Anderson's] remarks and [Sikorsky's] failure to hire [him]" for the permanent materials analyst position.   *Virag*, 2015 WL 540607, at *5 (holding that although a manager stated

that the company "likes [to] hire younger people.  You know, we like younger people at [the company]," the timing and context of the remark did "not come close to demonstrating 'that a nexus exists between the allegedly discriminatory statements and a defendant's [adverse employment action]'") (quoting *Silver v. North Shore Univ. Hosp.*, 490 F. Supp. 2d 354, 362 (S.D.N.Y. 2007)).[8]

Angione's second, untimely, application for a materials analyst position is even less compelling.  The position had been posted online, and after applying, Angione received a call from an unknown male manager informing him that he was qualified for the position.  [Dkt. #54-6, Ex. 4 to Def. Sikorsky's Mot. for Summ. J., Angione Dep. at 183:1-184:20].  After a period of silence, Angione followed up with the manager, who informed him that Sikorsky had decided not to fill the position.  [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 25; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 25].  As for evidence of discriminatory intent, Angione offers only his subjective belief that Sikorsky "[s]eemed like they wanted to hire younger people."  [Dkt. #54-6, Ex. 4 to Def. Sikorsky's Mot. for Summ. J., Angione Dep. at 186:4-10, 18-25].  Without any factual support, this belief is plainly insufficient to raise an inference of discriminatory intent.  *See Asante-Addae v. Sodexo, Inc.*, No. 3:13-cv-00489 (VLB), 2015 WL 1471927, at *11 (D. Conn. Mar. 31, 2015), *aff'd* 631 F. App'x 68 (2d Cir. 2016) ("'A plaintiff's speculations, generalities, and gut feelings, however genuine, when they are not supported by specific facts, do not allow for an inference of discrimination to be

---

[8] None of the other employees whom Angione claims also made this statement played any role in the decisions not to hire him for a permanent position or to terminate him.

drawn.'") (quoting *Whethers v. Nassau Health Care Corp.*, 956 F. Supp. 2d 364, 379 (E.D.N.Y. 2013)).

Angione fares no better in raising an inference of discrimination in connection with his third and final materials analyst application. The position was in a different department from the one in which he worked, and Angione interviewed with a different (unidentified) Sikorsky employee. [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 31 Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 31; Dkt. #54-6, Ex. 4 to Def. Sikorsky's Mot. for Summ. J., Angione Dep. at 199:19-200:1, 209:10-13].   Nothing in his vague description of his interview or his subsequent conversation with the unidentified employee who recommended him for the position suggests any discriminatory motive.  That the individual was "totally stupefied" that Angione was not selected does not alone support a theory of discrimination, nor does Sikorsky's decision to cancel the requisition. [Dkt. #54-6, Ex. 4 to Def. Sikorsky's Mot. for Summ. J., Angione Dep. at 200:3-4, 203:20-204:12].

Given the absence of any evidence to suggest that Sikorsky's decision not to hire Angione for a permanent position was motivated by discriminatory intent, he is unable to set forth even a *prima facie* case of age discrimination.

### 2. Angione was properly terminated for violating Sikorsky's policies restricting employee use of its equipment and computer system.

In addition to his failure to hire claim, Angione maintains that Sikorsky's and Arnold's decisions to terminate his contract employment constituted unlawful age discrimination.  However, the undisputed facts surrounding the

decision to terminate Angione simply do not raise any inference of discrimination.

Angione does not dispute that during his time at Sikorsky, he received policies which stated that he was prohibited from using Sikorsky's computer systems to conduct personal business.  [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶¶ 38-39; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶¶ 38-39; Dkt. #54-6, Ex. 4 to Def. Sikorsky's Mot. for Summ. J., Angione Dep. at 94:1-6].  At his deposition, he further admitted that he understood it was a rule that he could not use Sikorsky resources to perform personal work, and that he was specifically advised of this at different times by two Sikorsky employees.  [*Id.* at 107:7-108:4, 24-25].

None of Angione's attempts to get out from under this critical (and devastating) testimony are sufficient to do so.  First, his bare affidavit asserting that he was never explicitly warned about his use of email, never informed that he was not permitted to send email unrelated to his work during periods that he was not "direct billing/charging a client" of Sikorsky for work on a project, and that he observed an unknown number of unidentified Sikorsky employees "using email for non-employment related matters" is legally insufficient to refute these admissions.  [Dkt. #70, Angione Aff. at ¶ 11].  *See, e.g., Keepers, Inc. v. City of Milford*, 807 F.3d 24, 35 (2d Cir. 2015) ("[T]he 'sham-affidavit-rule' prevents a party from manufacturing an issue of fact 'by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's

previous deposition testimony.'") (quoting *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 482 (2d Cir. 2014)).

Second, Angione's assertion that there was no policy prohibiting personal use of Sikorsky's computer system is baseless.  The deposition testimony of Laczkoski, one of Angione's supervisors, does *not*, as Angione claims, call into doubt the existence of Sikorsky's personal email policy.  *See* [Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 39 (citing Dkt. #64, Ex. B to Pl.'s Opp'n, Laczkoski Dep. at 39:1-25)].  Instead, Laczkoski testified that while he was not aware of any rule at Sikorsky "that prohibits sending emails," whether or not an email was permissible "depends on its content."  [Dkt. #64, Ex. B to Pl.'s Opp'n, Laczkoski Dep. at 39:11-13, 21-23].  He further explained that Angione was terminated after he sent an email which "was inappropriate in itself" because it "indicated [Angione] was representing the company in a separate business venture other than Sikorsky Aircraft business."  [*Id.* at 39:6-10].  Laczkoski said nothing to undercut the existence of a personal email policy.  Indeed, his testimony was exactly the opposite.  Similarly, Angione's contention that he observed an unknown number of unidentified Sikorsky employees "using email for non-employment related matters" is unavailing.  [Dkt. #70, Angione Aff. at ¶ 11].  Angione did not offer any evidence that he informed anyone at Sikorsky with a duty to enforce the policy of the violations, nor does he offer any evidence that such a person was otherwise aware of the violations.  In addition, Angione does not offer any evidence that the individuals who violated the policy were warned and persisted in violating the policy, as he did.

Finally, Angione's assertion that he did not violate the computer use policy is utterly specious.  Neither Laczkoski's testimony nor any other evidence in the record supports Angione's rationalization that he was permitted to send personal emails whenever he was not "direct billing/charging a client" of Sikorsky for work on a project.  [Dkt. #70, Angione Aff. at ¶ 11].  He references no provision of the policy or any statement from any responsible Sikorsky employee to support his claim.  Such a belief is both illogical and self-serving, since, if true, Angione would seemingly have been able to claim that anytime he was drafting a personal email, he was not also working on a client matter, thereby enabling him to send personal emails and conduct personal business on Sikorsky equipment whenever he wanted, in complete contravention of the plain intent of the rule.  In addition, Angione fails to identify any circumstances during his employment at Sikorsky when he would have been permitted to use Sikorsky equipment while not working on Sikorsky-related matters.

With the undisputed record establishing a clear policy prohibiting the use of Sikorsky equipment for personal business, as well as Angione's knowledge of this policy, the parties further agree that Angione sent an email from his Sikorsky email account to promote the business interests of R3 Omni, a start-up business with which Angione was seeking to, and ultimately did, become associated following his departure from Sikorsky.  [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶¶ 56-57; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶¶ 56-57; Dkt. #54-6, Ex. 4 to Def. Sikorsky's Mot. for Summ. J., Angione Dep. at 125:1-7].[9]  They

---

[9] Angione's suggestions to the contrary in his bare affidavit are barred by the sham affidavit rule.  *See* [Dkt. #54-6, Ex. 6 to Def. Sikorsky's Mot. for Summ. J.,

further agree that this email was unrelated to Angione's duties at Sikorsky.  [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 59; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 59].  In fact, given the overlap between R3 Omni's and Sikorsky's businesses, as evidenced by the mistaken belief held by one of the intended recipients of Angione's email that Sikorsky was behind the kiosk sale, it is quite plausible that the two companies competed in some form with one another.  [Dkt. #54-15, Ex. 13 to Def. Sikorsky's Mot. for Summ. J. at SIK0072].  Finally, in reaching the decision to terminate him, Sikorsky human resources employee Amanda Weaver determined that during his time with Sikorsky, Angione had violated multiple company policies through his improper use of Sikorsky's computer system on multiple occasions, and had been instructed on these policies.  *See* [Dkt. #54-17, Ex. 15 to Def. Sikorsky's Mot. for Summ. J., Weaver Decl. at ¶¶ 3-4].

Against the weight of this evidence, Angione offers not one iota of support for his contention that Sikorsky's decision to terminate him had anything to do with his age.  First, Angione asserts (again via bare affidavit) that approximately two months before he was terminated, Sikorsky hired a new contract employee in his group who was a female between twenty and thirty years old.  [Dkt. #68, Pl.'s Rule 56(a)(2) Statement of Disputed Facts at ¶ 10 (citing Dkt. #70, Angione Aff. at ¶ 12)].  Beyond her age, Angione offers no evidence regarding her role in the

Angione Dep. at 124:3-9, 125:1-7, 126:14-24; Dkt. #70, Angione Aff. at ¶ 21]; *Keepers,* 807 F.3d at 35.  Indeed, his own contemporaneous email belies his post-deposition claim that he was never associated with R3 Omni, as the email he drafted referenced "the offer *we* presented to the chamber [of commerce] in Norwalk."  [Dkt. #54-15, Ex. 13 to Def. Sikorsky's Mot. for Summ. J. at SIK0073 (emphasis added)].

group, whether she assumed his position after he was terminated, and whether or not she complied with Sikorsky's email policies.  More significantly, Angione admits that at the time he was terminated, his work group was otherwise comprised of three employees all over forty years old, one who was over fifty years old, and one who was the only permanent employee in the group.  [*Id.*].  Given that each of these employees falls within the age class protected by the ADEA, their presence in Angione's work group at the time of his termination serves as powerful evidence rebutting any inference of discrimination.  *See* 29 U.S.C. § 631(a); *see also Coccareo v. AT&T Corp.*, No. 3:03-cv-914 (DJS), 2005 WL 171196, at *5 (D. Conn. Jul. 20, 2005) (granting summary judgment to employer on ADEA claims and finding that employer's "treatment of other employees negates any inference" of discrimination where employer gave benefit employee claimed he was denied because of his age "to members of the protected class").

Second, Sikorsky's decision not to terminate any other Sikorsky employee (contract or permanent) at the time it discharged Angione fails to raise any inference of discrimination.  *See* [Dkt. #68, Pl.'s Rule 56(a)(2) Statement of Disputed Facts at ¶ 11 (citing Dkt. #70, Angione Aff. at ¶ 13)].  Angione has not identified any other similarly-situated employees whom Sikorsky determined, at or around that time, had violated its computer policies and whom it declined to terminate or discipline.  Indeed, the lone employee he identifies as having also sent personal emails was one of his supervisors, Caldwell, a permanent Sikorsky employee, who testified that he did so "very infrequently" and never in the context of a separate, and potentially competitive, business venture.  *See* [Dkt.

29

#68, Pl.'s Rule 56(a)(2) Statement of Disputed Facts at ¶ 17; Dkt. #65, Ex. B to Pl.'s Opp'n, Caldwell Dep. at 39:14-17].  In short, Angione and Caldwell could hardly be less similarly-situated.  *See Rubinow v. Ingelheim*, No. 3:08-cv-1697 (VLB), 2010 WL 1882320, at *5 (D. Conn. May 10, 2010) ("[I]n order for evidence related to other employees to be relevant in a disparate treatment case, those employees . . . 'must have reported to the same supervisor as the plaintiff, must have been subject to the same standards governing performance evaluation and discipline, and must have engaged in conduct similar to the plaintiff's, without such differentiating or mitigating circumstances that would distinguish their conduct or the appropriate discipline for it.'") (quoting *Mazella v. RCA Global Commc'ns*, 642 F. Supp. 1531, 1547-48 (S.D.N.Y. 1986)).

Third, Angione incorrectly contends that the manner in which he was terminated supports an inference of discriminatory intent.  Angione maintains that his termination was in violation of Sikorsky's alleged policy requiring Sikorsky supervisors to meet with contract employees to discuss performance issues before deciding to terminate them.  *See* [Dkt. #68, Pl.'s Rule 56(a)(2) Statement of Disputed Facts, at ¶¶ 18-19].  However, the single page of deposition transcript Angione cites in support of this alleged policy does not provide any. The deponent, Caldwell, stated explicitly that contract employee performance was *not* formally evaluated and that it was *his personal* practice to perform a general assessment and to discuss performance issues with the employee before contacting the contract employer.  *See* [Dkt. #65, Ex. C to Pl.'s Opp'n to Defs.' Mots. for Summ. J., Caldwell Dep. at 51:1-5, 9-14].  Nowhere did Caldwell state

that he was required to speak with the contract employee before contacting their employer, or that he was otherwise not permitted to reach out immediately to the employer.  There is also no evidence that Caldwell had any involvement in Angione's termination.  *See* [*id.* at 55:10-25].

Fourth, Angione asserts that the information with which he was provided in connection with his termination supports his discrimination claim.  The Court respectfully disagrees.  By voicemail, Arnold employee Corey Lay informed Angione that his contract with Sikorsky had ended, and he provided him with no additional information.  [Dkt. #54-1, Def. Sikorsky's Rule 56(a)(1) Statement at ¶ 72; Dkt. #67, Pl.'s Rule 56(a)(2) Statement at ¶ 72; Dkt. #54-18, Ex. 16 to to Def. Sikorsky's Mot. for Summ. J. at SIK0087-88].  Angione challenges the accuracy of Lay's statement that the contract had ended because Angione's work group continued to order and provide spare parts.  [Dkt. #68, Pl.'s Rule 56(a)(2) Statement of Disputed Facts, at ¶ 12; Dkt. #70, Angione Aff. at ¶ 8].  Angione's argument assumes that the contract which ended was the contract between Sikorsky and its customer, rather than the contract between Arnold and Angione. There is no factual support for this conclusion.  In addition, even if the contract between Sikorsky and its customer ended, there could be additional work in progress to be completed.  That Angione's work group and "job duties" continued to exist says nothing about whether and why Sikorsky had decided to remove Angione from this role.  [Dkt. #70, Angione Aff. at ¶ 8].

Equally unpersuasive is Angione's assertion that Lay's decision not to provide Angione with a reason for his discharge constitutes evidence that the

reason Sikorsky now raises is pretextual.  [Dkt. #68, Pl.'s Rule 56(a)(2) Statement of Disputed Facts, at ¶ 15; Dkt. #70, Angione Aff. at ¶ 14].  Angione offers no evidence of any duty owed him by either of the defendants to provide him with a reason.  Angione was a temporary, at-will employee, whose Employment Agreement could be cancelled with or without any stated reason.  *See* [Dkt. #53-1, Def. Arnold's Rule 56(a)(1) Statement at ¶ 5; Dkt. #66, Pl.'s Rule 56(a)(2) Statement at ¶ 5; Dkt. #53-11, Ex. 1 to Callahan Aff. at ¶ 13].  Moreover, Angione does not contend that he ever asked Lay, or anyone else at Arnold or Sikorsky, why he was terminated.

Finally, given the overwhelming undisputed evidence to support Defendant Sikorsky's decision to discontinue Angione's temporary work assignment, even if Angione were found to have set forth a *prima facie* case of discrimination, he does not come close to refuting Sikorsky's legitimate, non-discriminatory, explanation for his discharge.

Accordingly, the Court GRANTS Defendant Sikorsky's motion for summary judgment.  In the absence of any evidence of discriminatory conduct in connection with his discharge, and in light of the terms of his Employment Agreement, the Court further GRANTS Defendant Arnold's motion for summary judgment.

IV.   <u>Conclusion</u>

For the foregoing reasons, the Employer Defendants' Motions for Summary Judgment are GRANTED.  Plaintiff's Complaint is DISMISSED with prejudice.  The

Clerk is directed to enter judgment in favor of the Defendants and to close the case.

IT IS SO ORDERED

_____/s/_____
Vanessa L. Bryant,
United States District Judge